IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DeWAYNE THOMPSON,      No. CIV S-09-3478-JAM-CMK-P

    Plaintiff,

     vs.     <u>AMENDED FINDINGS</u>

       <u>AND RECOMMENDATIONS</u>

CHRIS MAUCK, et al.,

    Defendants.

                               /

       Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Thompson's motion for summary judgment[1] (Doc. 35). The undersigned originally filed findings and recommendations granting defendant's motion for summary judgment on June 14, 2012. After those findings and recommendations were issued, but prior to the expiration of the objection period, the Ninth Circuit issued an opinion in <u>Woods v. Carey</u>, 684 F.3d 934 (9th Cir. 2012), requiring notice be given to a prisoner plaintiff as to what is required to defeat a motion for summary judgment at

---

[1] As mentioned in the original findings and recommendations, defendant Mauck did not join in the current motion.

1

the time such a motion is filed. The required notice was not originally provided to plaintiff contemporaneously with the filing of the pending motion. Defendant therefore provided the necessary supplemental notice to plaintiff on July 6, 2012. The court then allowed time for the parities to submit supplemental briefs in support of their position on the motion for summary judgment. Those supplemental briefs have now been received and considered (Docs. 43, 44, 45). The supplemental briefs do not materially alter the analysis of the motion for summary judgment. These amended findings and recommendations are therefore reissued without significant alteration and minimal additional analysis.

## I.  BACKGROUND

### A.  Plaintiff's Allegations

The court has summarized plaintiff's claims as follows: Plaintiff's complaint raises issues with disparage treatment he claims he received from various prison staff for complaining about the use of racial epithets. He claims defendant Mauck used the word "nigger" either to or around him. When he complained of the use of that language, defendant Mauck discriminated against him by changing his job in the canteen. He then filed a grievance and defendant Thompson changed his job assignment again. He alleges these two defendants violated his Equal Protection rights as he was treated differently because of his race.

### B.  Undisputed Facts

Defendant Thompson submits that there are no relevant facts in dispute. Specifically, defendant contends that plaintiff admitted during his deposition that defendant Thompson did not racially discriminate against him. As relevant to defendant Thompson, the undersigned finds the following facts are undisputed.

1. At the times relevant to this case, plaintiff was incarcerated at High Desert State Prison (HDSP);

2. Plaintiff is an African-American male inmate;

3. Plaintiff began working in the canteen at HDSP on June 6, 2009;

4. On August 6, 2009, plaintiff was reassigned to a kitchen job in Facility D;

5. During the time plaintiff was assigned to the kitchen job, August 6, 2009 through August 25, 2009, he was called to work on August 11, 13, 14, and 15, 2009.

6. Plaintiff was reassigned to a job as an Americans with Disabilities Act (ADA) assistant, on August 25, 2009;

7. In August 2009, defendant Thompson was a Facility D dining hall officer, whose duties included providing security for the dining hall and taking inventory of kitchen tools;

8. Defendant Thompson was on vacation from approximately August 8, 2009, through August 18, 2009;

9. Defendant Thompson did not have the authority to assign inmates to jobs, only an Assignment Lieutenant can assign jobs;

10. When defendant Thompson returned from vacation, he did not call plaintiff to work because he had been informed of difficulties between plaintiff and other kitchen workers;

11. Defendant Thompson called other African-American workers into work in the dining hall;

12. The Assignment Lieutenant arranged for plaintiff to switch jobs with another African-American inmate who held the position of ADA assistant.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

/ / /

/ / /

/ / /

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In his complaint, plaintiff alleges disparage treatment by defendant Thompson for changing his job assignment and failing to call him into work. He clarified this claim during his deposition to the extent that he does not allege defendant Thompson racially discriminated against him, but discriminated against him by not calling him to work. In his opposition to the motion for summary judgement, he argues it was unfair of defendant Thompson to not call him into work and have his assignment changed because he was ready, able, and willing to report for

his job.  He argues that if other inmates assigned to the kitchen had problems with him, and were unwilling to work with plaintiff, they are the ones who should have been reassigned.  Plaintiff's opposition consists mainly of arguments; he does not submit any evidence or declarations to the court which support his claims.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  "To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 194, 1194 (9th Cir. 1998)).  Prisoners are protected from invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).  However, if a governmental policy purposefully treats a non-suspect class differently, the policy need only have a rational relationship to legitimate legislative goals to pass constitutional muster.  See Lee, 250 F.3d at 687.  In order to show a discriminatory purpose, a plaintiff must show the "particular course of action was taken at least in part 'because of,' not merely 'in spite of,' its adverse affects

upon an identifiable group." Id. at 687 (quoting Navarro v. Block, 72 F.3d 712, 716 n.5 (9th Cir. 1995)).

Based on plaintiff's deposition and arguments in his opposition to the motion, and supplemental opposition, it is difficult to see any equal protection claim against defendant Thompson. Plaintiff acknowledges that he was not denied equal treatment because of his race, 'but rather to treat me dissimilar to those in my work class . . . ." (Supp. Opp., Doc. 43 at 3). While he may consider it unfair that he was the one to suffer reassignment when he was not the one unwilling to work, and it was the other inmates who had a difficult time interacting and getting along with him, such unfair treatment is not the equivalent of discrimination. Defendant Thompson has presented evidence of a legitimate penological reason for plaintiff to have been reassigned from his kitchen job, that of institutional security and avoiding inmate unrest. In support of this reason, defendant Thompson contends that such inmate unrest in the kitchens would disrupt the workings of the entire prison. In addition, as plaintiff was replaced by another African-American inmate in the kitchen job, there is uncontroverted evidence that defendant Thompson's actions (assuming he had at least some control over inmate assignments) were not racially motivated.

Even if, as plaintiff argues, defendant Thompson acted unreasonably in having plaintiff reassigned instead of the other inmates, such action does not indicate a violation of plaintiff's equal protection rights. Before there can be a violation of an inmate's equal protection rights, there has to be evidence that the inmate was discriminated against because of his membership in a protected class. See Lee, 250 F.3d at 686. There is no evidence in this case that plaintiff was mistreated on the basis of his race or any other protected class status. Rather, the action to remove plaintiff from his kitchen position was based on the working relationship of the inmates involved. Even plaintiff acknowledges he was not treated differently because of his race, but was mistreated in relation to others in his work class.

///

To the extent plaintiff argues that he should only have been removed by committee decision, and to do otherwise violates his due process rights, that claim was not originally brought in his complaint. Even if it had been raised as an issue in the complaint, he fails to argue that defendant Thompson is the one who violated his due process rights. Plaintiff argues there are only two ways an inmate's job can be changed. One is by committee and the other is by an inmate request form. He argues he did not submit an inmate request nor was there a committee hearing held for that purpose. He therefore assumes that defendant Thompson submitted a fraudulent inmate request form on his behalf. Plaintiff acknowledges he has no proof of this possibility. That there is such a possibility is an insufficient claim, and plaintiff has provided no evidence to support his contention that defendant Thompson did in fact submit a forged document to facilitate plaintiff's transfer. Notably, although defendant Thompson does explicitly explain how plaintiff's job was in fact changed, a decision he and plaintiff both agree was not directly within his power, defendant Thompson also does not contend that the change was done pursuant to plaintiff's request. Additionally, as defendant Thompson argues, an inmate has no constitutional right to any particular prisoner job.

### IV. CONCLUSION

The undersigned finds no genuine issue as to any material fact. Defendant Thompson has submitted undisputed evidence that no racial discrimination occurred in transferring plaintiff from his kitchen position into the ADA assistant position. He further submits uncontroverted evidence that the decision to transfer plaintiff was not race related, but was related to institutional security. Plaintiff presented no evidence which support his contention otherwise.

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 35) be granted;

2. Judgment be entered in favor of defendant Thompson only; and

///

3.   Plaintiff and defendant Mauck to be ordered to file status reports indicating whether this case is ready to be set for trial.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2012

                                                                   /s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

9